IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (Cincinnati)

| | | |
|---|---|---|
| LORETTA BUNTAIN<br>910 Brookcrest Dr.<br>Mason, OH 45040 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| TRIHEALTH HOSPITAL, INC.<br>5861 Cinema Drive<br>Milford, OH 45150 | )<br>)<br>)<br>) | **(JURY DEMAND ENDORSED HEREIN)** |
| **Serve also:**<br>TRIHEALTH HOSPITAL, INC. c/o<br>FILEJET INC. (Stat. Agent)<br>1201 Dublin Rd., #609<br>Columbus, OH 43215 | )<br>)<br>)<br>)<br>)<br>) | |
| **-and-** | )<br>) | |
| TRIHEALTH HOSPITAL, INC.<br>4606 Wesley Ave, Ste. 3B<br>Cincinnati, OH 45212 | )<br>)<br>)<br>) | |
| Defendant. | )<br>)<br>) | |

Plaintiff Loretta Buntain, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

**PARTIES**

1. Buntain is a resident of the city of Mason, Warren County, Ohio.

2. Defendant TRIHEALTH HOSPITAL, INC. ("TriHealth") is a domestic non-profit corporation that conducts business throughout the state of Ohio.

3. TriHealth is, and was at all times hereinafter mentioned, Buntain' employer within the meaning of the Age Discrimination in Employment Act of 1967 ("ADEA"), the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act of 1990 "(ADA"), and R.C. §4112 *et seq*.

4. Within 300 days of the adverse employment actions described herein, Buntain dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Ohio Civil Rights Commission ("OCRC") against TriHealth, Charge No. 473-2022-01159 ("EEOC Charge").

5. On or about December 6, 2022, the EEOC issued and mailed a Notice of Right to Sue letter to Buntain regarding her EEOC Charge.

6. Buntain received the Notice of Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 200e-5(f)(1), which had been attached hereto as Plaintiff's Exhibit 1.

7. Buntain has filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

8. Buntain has properly exhausted all administrative remedies pursuant to 29 C.R.F. § 1614.407(b).

## JURISDICTION & VENUE

9. All of the material events alleged in this Complaint occurred in or around Clermont County, Ohio.

10. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1), (2), and/or (3).

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Buntain is alleging federal law claims under the ADEA and FMLA.

12. This Court has supplemental jurisdiction over Jackson's states law claims pursuant to 28 U.S.C. § 1367, as Buntain's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

14. Buntain is a former employee of TriHealth.

15. At all times noted herein, Buntain was qualified for her position with TriHealth.

16. At all times noted herein, Buntain could fully perform the essential functions of her job, with or without a reasonable accommodation.

17. Buntain worked for TriHealth as a lab processor and phlebotomist from 1997, until TriHealth unlawfully terminated her employment on or about March 1, 2022.

18. Buntain suffers from anxiety, depression, and panic attacks, placing her in a protected class for disability.

19. Due to her disabilities, Buntain has received intermittent FMLA leave for the past fifteen years.

20. This intermittent FMLA leave gave TriHealth adequate notice of her protected class for disability.

21. Buntain was 52 when TriHealth unlawfully terminated her employment, placing her in a protected class for her age.

22. In or around December 2021, TriHealth transferred Buntain to a new site.

23. Buntain began working directly under outreach site director Dana Nichols.

24. When Buntain first started at the new site, she was trained by office manager Ravonika LNU.

25. Ravonika LNU warned Buntain early on that this particular site had issues with high turn-over.

26. During the first few weeks of working at the new site, Buntain realized that patients were not getting their urinalysis tests completed at the time of their visits, because doctors were ordering that the patients schedule a second visit.

27. In or around December 2021, TriHealth held a staff meeting to change this process and have people get urinalysis tests done the same day as their original visit.

28. Ravonika LNU asked Buntain to come in early and help collect urine specimens from patients when they came in for routine exams.

29. Other medical assistants were instructed to help with this process, but Buntain was the only phlebotomist involved.

30. Concerned about collecting samples without a doctor's orders, Buntain asked Ravonika LNU how this process was going to be approved by the doctors.

31. Ravonika LNU told Buntain and the other medical assistants to ignore the current policy and to take samples regardless. Ravonika LNU informed them to obtain a doctor's order retroactively.

32. Ravonika LNU said that if the sample wasn't needed, it would just be thrown away in the biohazard trash.

33. There were no written memos memorializing this meeting and these instructions.

34. After this meeting, Buntain had many conversations with doctors regarding this new policy, but everyone seemed fine with it.

4

35. The same day, Buntain texted Nichols to report the meeting with Ravonika LNU, but Nichols said that this policy change was okay.

36. On or around February 18, 2022, Buntain received a phone call from Nichols and outreach director Erica Walker.

37. Nichols accused Buntain of stealing $20 from a patient's purse.

38. Buntain was shocked and confused by these false allegations, and she adamantly denied them.

39. Nichols and Walkers seemed to believe Buntain's response, and dropped the issue.

40. In or around late February 2022, Buntain's daughter was diagnosed with Type I diabetes, and subsequently became seriously ill.

41. Buntain told her daughter to go to the hospital to get some tests run.

42. A few days later, Buntain received a call from her daughter: the hospital's test revealed that her pancreas was shutting down and that she had to be rushed to the hospital for a procedure.

43. Buntain called her husband in a panic to let him know that an emergency unit was being called to take her daughter to the ICU.

44. Buntain began telling Nichols about the situation, but broke down because she started having a panic attack.

45. Nichols approved Buntain to leave work and be with her daughter.

46. Buntain's daughter spent four days in the hospital and eventually recovered from a lifesaving procedure.

47. When Buntain's daughter returned home, Buntain requested FMLA leave to stay home and care for her.

48. When Buntain came returned to work on or around February 28, 2022, HR representative Kim Muse asked to have a meeting with her.

49. In the meeting were Muse, Walker, Buntain, and two security guards, Kevin LNU and Bree LNU.

50. Kevin LNU asked Buntain if she knew why she was asked to be in this meeting.

51. Buntain responded that she did not.

52. Kevin LNU then accused Buntain of stealing $20 from a patient's purse.

53. Buntain denied stealing the money and further explained to Kevin LNU that she had already spoken with Nichols and Walker about this and denied the allegation then as well.

54. Kevin LNU then asked Buntain about the new policy for taking urine samples for every patient regardless of the doctor's orders.

55. Buntain said she was aware of this policy and told Kevin LNU about Ravonika LNU's December meeting and new directive.

56. Kevin LNU suddenly began pounding the table and threatened to call the Miami Township Police Department.

57. Buntain told Kevin LNU to call the police if he felt he needed to do so, but to give her time to call an attorney.

58. Kevin LNU asked why Buntain would need an attorney.

59. Buntain then asked why Kevin LNU needed to call the police, and again denied any wrongdoing.

60. Muse told Buntain that TriHealth was suspending her pending an investigation into the missing money.

61. Kevin LNU told Buntain not to talk to anyone from TriHealth until the investigation was over, to collect all her things, and to leave.

62. Buntain complied and left TriHealth sobbing.

63. On or about March 1, 2022, Buntain received a call from Muse and Walker saying that TriHealth was terminating her employment because she was collecting unauthorized urine samples.

64. Buntain said that she wished to appeal her termination because she had done nothing wrong.

65. Walker said that TriHealth would mail a letter and that Buntain would have seven days to appeal.

66. However, the letter did not arrive until after these seven days had lapsed.

67. When Buntain tried to appeal the termination anyway, she got a call back from Muse on or around March 22, 2022, saying that her appeal had failed.

68. Buntain's FMLA would have been renewed in March 2022, but TriHealth terminated her employment before she could complete the paperwork.

69. This termination of Buntain's employment constituted an adverse employment action.

70. The above facts demonstrate that TriHealth engaged in a pattern and practice of age and disability discrimination.

71. There was a causal connection between Buntain's disability and Defendant's termination of Buntain's employment

72. There was a causal connection between Buntain's age and Defendant's termination of Buntain's employment.

73. There was a causal connection between Buntain's FMLA usage and Defendant's termination of Buntain's employment.

74. TriHealth's purported reason for Buntain's employment termination was pretextual.

75. TriHealth actually terminated Buntain's employment in in an act of discrimination.

76. As a result of the above, Buntain has suffered and will continue to suffer damages.

## COUNT I: AGE DISCRIMINATION IN VIOLATION OF R.C. § 4112 et seq.

77. Buntain restates each and every prior paragraph of this complaint, as if it were fully restated herein.

78. Buntain is 52.

79. At all times relevant, Buntain was a member of a statutorily-protected class under R.C. §4112.14(B).

80. Defendant treated Buntain differently from other similarly situated employees based on her age.

81. As of March 1, 2022, Buntain was fully qualified for her position and employment with Defendant.

82. Buntain, at age 52, was a member of a statutorily-protected class under R.C. § 4112.14(B) at the time she was terminated from her employment with Defendant.

83. Buntain was terminated from her employment on or around March 1, 2022.

84. Defendant violated R.C. §4112.02 and R.C. § 4112.99 by discriminating against Buntain based on her age.

85. Buntain suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

86. As a direct and proximate result of Defendant's conduct, Buntain suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **COUNT II: AGE DISCRIMINATION IN VIOLATION OF THE ADEA**

87. Buntain restates each and every prior paragraph of this complaint, as if it were fully restated herein.

88. Buntain is 52.

89. At all times relevant, Buntain was a member of a statutorily-protected class under the ADEA.

90. Defendant treated Buntain differently from other similarly situated employees based on her age.

91. As of March 1, 2022, Buntain was fully qualified for her position and employment with Defendant.

92. Buntain, at age 52, was a member of a statutorily-protected class under the ADEA. at the time she was terminated from her employment with Defendant.

93. Buntain was terminated from her employment on or around March 1, 2022.

94. Defendant violated the ADEA by discriminating against Buntain based on her age.

95. Buntain suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to the ADEA.

96. As a direct and proximate result of Defendant's conduct, Buntain suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT III: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

97. Buntain restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

98. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

99. TriHealth is a covered employer under the FMLA.

100. During her employment, Buntain qualified for FMLA leave.

101. Throughout her employment, Buntain received intermittent FMLA for her depression, anxiety, and panic attacks.

102. In or around late February 2022, Buntain used FMLA leave to care for her daughter.

103. When Buntain returned to work, she was immediately placed on suspension pending an investigation into a theft that Walker and Nichols knew Buntain did not commit.

104. On or around March 1, 2022, Buntain's employment was terminated for the unauthorized collection of urine samples, despite being told to do so by Ravonika LNU, Nichols, and the doctors themselves.

105. TriHealth terminated Buntain's employment the same month that her FMLA became renewable, but she was discharged before she was allowed to complete the paperwork.

106. Defendant's rationale for the termination of Buntain's employment was pretextual.

107. Defendant actually terminated Buntain to prevent her from further using her lawfully-provided FMLA leave.

108. Defendant unlawfully interfered with Buntain's exercise of her rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

109. As a direct and proximate result of Defendant's conduct, Buntain is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

### COUNT IV: RETALIATION IN VIOLATION OF THE FMLA

110. Buntain restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

111. Throughout her employment with TriHealth, Buntain received intermittent FMLA for her depression, anxiety, and panic attacks.

112. In or around late February 2022, Buntain used FMLA leave to care for her daughter's health and her own serious health conditions.

113. When Buntain returned to work, she was immediately placed on suspension pending an investigation into a theft that Walker and Nichols knew Buntain did not commit.

114. On or around March 1, 2022, Buntain's employment was terminated for the unauthorized collection of urine samples, despite being told to do so by Ravonika LNU, Nichols, and the doctors themselves.

115. Defendant's rationale for the termination of Buntain's employment was pretextual.

116. Defendant actually terminated Buntain's employment to retaliate for her utilizing her FMLA leave.

117. Defendant retaliated against Buntain by terminating her employment.

118. Defendant willfully retaliated against Buntain in violation of U.S.C. § 2615(a).

119. As a direct and proximate result of Defendant's wrongful conduct, Buntain is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT V: DISABILITY DISCRIMINATION UNDER R.C. 4112.01 et *seq.*

120. Buntain restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

121. Buntain suffers from anxiety, depression, and panic attacks.

122. Buntain is disabled.

123. In the alternative, TriHealth perceived Buntain as being disabled.

124. Buntain' condition constituted a physical impairment.

125. Buntain' condition substantially impaired one or more of her major life activities including working.

126. TriHealth perceived Buntain condition to substantially impair one or more of her major life activities including working.

127. TriHealth treated Buntain differently than other similarly-situated employees based on her disabling condition.

128. TriHealth treated Buntain differently than other similarly-situated employees based on her perceived disabling condition.

129. Buntain placed TriHealth on notice of her disability through her use of intermittent FMLA leave due to her disabilities.

130. Further, Nichols had first-hand knowledge of Buntain's disabilities, and she witnessed Buntain having a panic attack after learning of her daughter's sudden hospitalization.

131. On or about March 1, 2022, Defendant terminated Buntain' employment without just cause.

132. Alternatively, Defendant's cited reason for Buntain's termination was pretext.

133. Defendant terminated Buntain's employment based her disability.

134. Defendant terminated Buntain's employment based her perceived disability.

135. Defendant violated R.C. § 4112.02 when it discharged Buntain based on her disability.

136. Defendant violated R.C. § 4112.02 when it discharged Buntain based on her perceived disability.

137. Defendant violated R.C. § 4112.02 by discriminating against Buntain based on her disabling condition.

138. Defendant violated R.C. § 4112.02 by discriminating against Buntain based on her perceived disabling condition.

139. Buntain suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

140. As a direct and proximate result of Defendant's conduct, Buntain suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VI: DISABILITY DISCRIMINATION UNDER THE ADA

141. Buntain restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

142. Buntain suffers from anxiety, depression, and panic attacks.

143. Buntain is disabled.

144. In the alternative, TriHealth perceived Buntain as being disabled.

145. Buntain' condition constituted a physical impairment.

146. Buntain' condition substantially impaired one or more of her major life activities including working.

147. TriHealth perceived Buntain condition to substantially impair one or more of her major life activities including working.

148. TriHealth treated Buntain differently than other similarly-situated employees based on her disabling condition.

149. TriHealth treated Buntain differently than other similarly-situated employees based on her perceived disabling condition.

150. Buntain placed TriHealth on notice of her disability through her use of intermittent FMLA leave due to her disabilities.

151. Further, Nichols had first-hand knowledge of Buntain's disabilities, and she witnessed Buntain having a panic attack after learning of her daughter's sudden hospitalization.

152. On or about March 1, 2022, Defendant terminated Buntain' employment without just cause.

153. Alternatively, Defendant's cited reason for Buntain's termination was pretext.

154. Defendant terminated Buntain's employment based her disability.

155. Defendant terminated Buntain's employment based her perceived disability.

156. Defendant violated the ADA when it discharged Buntain based on her disability.

157. Defendant violated the ADA when it discharged Buntain based on her perceived disability.

158. Defendant violated the ADA by discriminating against Buntain based on her disabling condition.

159. Defendant violated the ADA by discriminating against Buntain based on her perceived disabling condition.

160. Buntain suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to the ADA.

161. As a direct and proximate result of Defendants' conduct, Buntain suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VII: RETALIATION

162. Buntain restates each and every prior paragraph of this complaint, as if it were fully restated herein.

163. During her employment with TriHealth, Buntain made numerous complaints regarding the new policy for collecting urine samples from every patient regardless of a doctor's orders.

164. Buntain wanted to make sure that her supervisors were aware of Ravonika LNU's plan and to confirm that this policy was meant to be implemented.

165. These were protected complaints.

166. Buntain was assured that everything was fine regarding her complaints.

167. However, soon after she made these complaints, TriHealth suddenly terminated Buntain's employment for collecting urine samples without a doctor's orders.

168. The temporal proximity between Buntain's complaints and the termination of her employment shows that Buntain was actually fired in retaliation for making these protected complaints.

169. Defendant's actions were retaliatory in nature based on Buntain's opposition to new policy.

170. As a direct and proximate result of Defendants' retaliatory discrimination against and termination of Buntain, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Buntain demands from Defendant the following:

a) Issue a permanent injunction:

   i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

   v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge her personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Buntain for physical injury, physical sickness, lost wages, emotional

distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Buntain's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Matthew Bruce*
Matthew G. Bruce (0083769)
 Trial Attorney
Evan R. McFarland (0096953)
**SPITZ, THE EMPLOYEES' LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, Ohio 45246
Phone: (216) 291-0244
Fax: (216) 291-5744
Email: matthew.bruce@spitzlawfirm.com
Email: evan.mcfarland@spitzlawfirm.com

*Attorneys for Plaintiff Loretta Buntain*

**JURY DEMAND**

Plaintiff Loretta Buntain demands a trial by jury by the maximum number of jurors permitted.

                                          */s/ Matthew Bruce*
                                          Matthew G. Bruce (0083769)
                                               Trial Attorney
                                          **SPITZ, THE EMPLOYEES' LAW FIRM**